UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD BROWN,
#687818,

    Petitioner,                                               Civil Action No. 19-CV-12272

vs.                                                       HON. BERNARD A. FRIEDMAN

WILLIS CHAPMAN,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner in this matter seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for two counts of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); two counts of torture, Mich. Comp. Laws § 750.85; two counts of unlawful imprisonment, Mich. Comp. Laws § 750.349b; and two counts of felony-firearm, Mich. Comp. Laws § 750.227b. For the reasons stated below, the Court shall deny petitioner's application.

**I. Background**

Petitioner was convicted following a trial in which he was tried jointly, but with two separate juries, with co-defendants Jeremy Dewayne Brown, Brandon Lewis Cain, and Brian Christopher Lee. The relevant facts of the case, as recited by the Michigan Court of Appeals, are as follows:

> Defendants' convictions arise from the abduction, torture, and murder of best friends, 18-year-old Abreeya Brown (Brown) and 21-year-old Ashley Conaway, after they refused to discontinue the prosecution of

defendants Cain and Lee for a separate shooting incident weeks earlier. Brown and Conaway were abducted on the evening of February 28, 2012. They were placed in the trunk of a vehicle and, for a short while, were able to use their cell phones to communicate with friends and family members from their location in the trunk, but they were not seen or heard from afterward. On March 24, 2012, the police found the victims' bodies buried in shallow graves in Eliza Howell Park. Autopsies revealed that each victim had been shot in the head at close range.

\* \* \*

Brown's stepfather, Major Chapman, testified that while Brown was dragged to the trunk of a car, Cain fired shots at their home.

\* \* \*

After the Cain/Lee jury was empaneled, [co-defendant Miguel] Rodriguez pleaded guilty to two counts of second-degree murder and agreed to testify truthfully on behalf of the prosecution.

\* \* \*

Toward the end of trial, however, the prosecutor interviewed Rodriguez and informed the trial court that she suspected that he intended to perjure himself because his plea allocution differed from his interview statements regarding whether he knew the victims were in the trunk and whether he saw Lee walking toward Eliza Howell Park with a victim. The prosecutor urged the trial court to treat Rodriguez as an unavailable witness, reasoning that she could not call a witness to testify who she knew intended to perjure himself. She noted, however, that the prosecution had not yet decided whether to withdraw Rodriguez's plea because of his failure to fulfill the obligation to testify truthfully.

The trial court ruled that good cause had been shown to treat Rodriguez as an unavailable witness and denied defendants' motions for a mistrial. R. Brown's attorney also later noted on the record that, even though the prosecutor declined to call Rodriguez to testify, his client wanted to call him. But then Rodriguez asserted his Fifth Amendment privilege and the trial court ruled that no one could call Rodriguez as a witness.

* * *

Some of the prosecutor's argument about Rodriguez was cumulative. For example, even without Rodriguez's testimony, other evidence established that Tristan Cash transported Rodriguez that night to various scenes of the crimes and that Rodriguez purchased shovels and gas for defendants, which the jury could infer were used to bury the victims and burn the car used to kidnap them.

* * *

Moreover, in light of the overwhelming evidence against R. Brown, any additional promises that Rodriguez would further implicate him were not outcome determinative. The text messages between R. Brown and J. Brown establish their plan of "hittin' that lick," which required a gun and a car. The very next day, R. Brown's cell phone placed him in the Hamtramck neighborhood at the time of the kidnapping and shooting at Chapman's home. From R. Brown's subsequent statement that he "almost got [his] f* *kin' head blown off," the jury could infer that he was involved in the crossfire between Cain and Chapman. After the kidnapping, the victims reported that they were inside a silver Chrysler Sebring and R. Brown was seen driving a green or gray Chrysler Sebring that night. In addition, cellular phone tower usage immediately after the kidnapping showed R. Brown's phone was moving in the same direction as the victims' phones. The victims were shot and buried in Eliza Howell Park and the jury could infer that R. Brown shot them and dug their graves because he arrived at Raymon's nearby house later, covered in mud, with a gun he needed to clean and bullets he wanted to dispose of. He also carried one of the victim's purses. When Rodriguez joined him at Raymon's house, R. Brown requested a gas can filled with gas. The silver Chrysler Sebring was parked on Bramell Street at the time. Just after R. Brown left the home, emergency vehicles responded to Bramell Street to control a fire involving a silver Chrysler; a gas can sat nearby. In the aftermath of the kidnapping and murders, R. Brown texted demands to be paid to Rodriguez, inquired what [Jasmine] Richbow saw and what should be done to her, and threatened to kill Cash for being a "snitch." Given these facts linking R. Brown to the crimes, any mention of Rodriguez's proposed testimony about his involvement in the crimes did not affect R. Brown's right to a fair trial.

People v. Brown, No. 314341, 2016 WL 146029, at * 1, 8, 10, 13, 16 (Mich. Ct. App. Jan. 12, 2016)

(footnotes omitted).

Petitioner's conviction was affirmed on appeal, although the case was remand to correct the sentence. *See id*. at *23. Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Brown*, No. 12-05176-03 (Wayne Cty. Cir. Ct., Oct. 2, 2017). The Michigan appellate courts denied leave to appeal. *People v. Brown*, No. 342694 (Mich. Ct. App. Sept. 11, 2018); *lv. den*. 925 N.W. 2d 865 (Mich. 2019).

Petitioner seeks habeas relief on the following grounds:

I. Did the Michigan Court of Appeals' denial result in a decision that was contrary to *Crawford v Washington*, where he was deprived of his Sixth Amendment right to confrontation and cross-examination of Miguel Rodriguez after the prosecution had informed the jury what his testimony would consist of, also did the court's decision result in a decision that was based on an unreasonable determination of the fact, where the prosecution withheld an exculpatory statement by Miguel Rodriguez in violation of Petitioner's Fourteenth Amendment right to due process and *Brady*?

II. Did the court denial result in a decision that was contrary to *Evitts v. Lucey*, where Petitioner was deprived of his constitutional right to due process under the Sixth Amendment of the U.S. Constitution where the state lower courts committed error due to their failure to produce the transcripts or review the record of the *Walker* hearing and/or failure to make any attempt to reconstruct the *Walker* hearing transcripts?

III. Is the Petitioner entitled to a new trial where he was denied his fundamental right to a fair trial as guaranteed under the Sixth and Fourteenth Amendment of the U.S. Constitution where the prosecutor knowingly elicited false testimony evidence from Jasmine Richbow?

IV. Did the state court decision result in a decision that was contrary to *Brady v Maryland* where Petitioner was deprived of his right to *Brady* violating his Sixth and Fourteenth Amendment rights to due process and a fair trial under the United States Constitution where the prosecutor suppressed Abreeya Brown's purse?

4

V. Did the state courts decision result in a decision that was contrary to *Strickland v Washington* where Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to due process under the United States Constitution where the prosecution case relied solely on the testimony of the witnesses [and] counsel's complete failure to conduct pretrial preparatory investigative interviews of any of the prosecution's witnesses constructively deprived the Petitioner of his rights since counsel's failure to investigate was incomplete his inability to subject the prosecution's case to any meaningful adversarial testing was also incomplete?

VI. The court denial result in a decision that was contrary to *Washington v Texas*, where Petitioner was deprived of his constitutional right to the compulsory process for obtaining a witness in his defense and a fair trial under the Sixth and Fourteenth Amendment of the United States Constitution where the trial court ruled Petitioner could not call Miguel Rodriguez to testify?

VII. Did the state court's decision result in a decision contrary to *Strickland v Washington* where Petitioner deprived of his Sixth Amendment rights to effective assistance of appellate counsel and Fourteenth Amendment right to due process under the United States Constitution where appellate counsel failed to raise in a proper post-trial motion or on first appeal obvious defects in the trial process that would guaranteed reversal for Petitioner?

**II. Legal Standards**

28 U.S.C. § 2254(d), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

**III. Discussion**

**A. Claims 1, 4, and 6: Confrontation Clause, Brady and Compulsory Process Claims**

In his first claim, petitioner contends that his Sixth Amendment right to confrontation was

> violated when the prosecutor decided not to call co-defendant Miguel Rodriguez as a witness for the prosecution after stating in her opening argument that she would call Rodriguez to testify and that he would offer incriminating testimony against petitioner. Petitioner also claims that the prosecutor violated the dictates of Brady v. Maryland, supra, by failing to call Rodriguez as a witness after he recanted his original incriminating statements.

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to him. However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore*, 954

6

F.2d 379, 381 (6th Cir. 1992); *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 825 (E.D. Mich. 2009). Nor does the right to confrontation impose a duty upon the prosecution to call a particular witness. *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972). The Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985). In Cooper v. California, 386 U.S. 58, 62 n.2 (1967), the Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an informant to testify against him to be "absolutely devoid of merit." Therefore, the Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985).

To the extent that petitioner claims that the prosecutor's opening statements violated his right to confrontation, he is not be entitled to habeas relief. In *Bruton v. United States*, 391 U.S. 123, 127-28 (1968), the Supreme Court held that the Sixth Amendment right to confrontation is violated when a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand. "[B]ecause it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements." *U.S. v. Johnson*, 581 F. 3d 320, 326 (6th Cir. 2009).

The prosecutor's opening statement does does not fall within the scope of *Bruton* because the remark was "not testimonial evidence because it was made by counsel." *United States v. Crowe*, 614 F. App'x 303, 307 (6th Cir. 2015). *See also United States v. Wilson*, 605 F.3d 985, 1017 (D.C. Cir. 2010) (declining to apply *Bruton* because "[t]he opening statement and closing argument made by [counsel] neither were admitted into evidence nor were they testimony"). The

7

jury in petitioner's case was instructed that the attorneys' arguments were not evidence, Tr. 12/7/12, p. 50, ECF No. 8-29, PageID. 4002, thus, there was no *Bruton* violation. *Crowe*, 614 F. App'x at 307.

Petitioner further argues in his first claim that the prosecutor withheld potentially exculpatory information revealed during Rodriguez's interview. The Michigan Court of Appeals rejected petitioner's claim:

> In this case, after the prosecutor interviewed Rodriguez and declined to call him to testify because she anticipated that he would perjure himself, Rodriguez asserted his Fifth Amendment right to silence and the trial court ruled that he could not be called as a witness at trial. Therefore, even assuming that the prosecutor possessed and suppressed evidence favorable to defendants, the outcome of the trial would not have been different because Rodriguez's testimony could not have been presented. Therefore, any alleged suppression of evidence would not require reversal.

*Brown*, 2016 WL 146029, at *17 (internal citation omitted).

In *Brady* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 683 (1985). Further, "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*,

8

527 U.S. 263, 281-82 (1999). The Sixth Circuit has noted that

> [p]rejudice (or materiality) in the *Brady* context is a difficult test to meet: the Supreme Court in *Strickler* required that there must be a "reasonable probability that the jury would have returned a different verdict"; if the defendant would still have been convicted based on evidence not affected by the suppressed material, the conviction must stand.

Jamison v. Collins, 291 F.3d 380, 388 (6th Cir. 2002), as amended on denial of reh'g (July 11, 2002).

In the present case, the Michigan Court of Appeals reasonably rejected petitioner's *Brady* claim. Because Rodriguez exercised his Fifth Amendment right not to testify, petitioner failed to show that the outcome of the trial would have been different. Petitioner is not entitled to relief on his first claim.

In his fourth claim, petitioner argues that the prosecutor suppressed evidence that the police recovered Abreeya Brown's purse at the scene of the kidnapping. Petitioner claims that this evidence would have impeached Jasmine Richbow's testimony that she had seen petitioner and his brother in possession of Abreeya Brown's purse on Brammell Street.

Petitioner it not entitled to habeas relief on this claim because it was disclosed at trial that the police recovered Abreeya Brown's purse from the scene of the kidnapping. Brittany Chapman testified that the police recovered the purse from the crime scene, Tr. 11/19/12, p. 84; ECF No. 8-20, PageID. 2500, and "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (citation omitted). "If previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). As the Sixth Circuit has noted, "The

9

Supreme Court [has] rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation. Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *United States v. Bencs,* 28 F.3d 555, 561 n.5 (6th Cir. 1994). Petitioner has not shown how he was prejudiced by the delayed disclosure of the purse evidence. He is not entitled to relief on his fourth claim.

In his sixth claim, petitioner argues that his right to compulsory process was violated when the trial judge did not compel Rodriguez to testify on petitioner's behalf. As noted above, the prosecutor intended to call Rodriguez but then decided not to do so because she suspected he intended to perjure himself. For this reason, the trial judge declared Rodriguez to be an unavailable witness. Rodriguez's attorney indicated that Rodriguez would invoke his Fifth Amendment privilege against self-incrimination and decline to testify in any event. Under these circumstances, petitioner's right to present a defense plainly was not violated, as no Supreme Court precedent required the trial judge to overrule Rodriguez's right to remain silent. To the contrary, the Sixth Circuit has held that "[a] defendants right to force a witness to testify must yield to that witness' assertion of his Fifth Amendment privilege against self incrimination, where it is grounded on a reasonable fear of danger of prosecution." *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998) (internal quotation marks and citation omitted). As Rodriguez was a co-defendant in this case, his fear of incriminating himself while testifying about this incident was plainly reasonable.

**B. Claim 2: Petitioner's Transcript Claim**

In his second claim, petitioner argues that his due process rights were violated because the trial court did not transcribe an evidentiary hearing regarding the admissibility of a

10

police interview with petitioner. Such a hearing, known in Michigan as a *Walker* hearing, is an opportunity for a defendant to challenge the admissibility of his statement to the police. *See People v. Walker*, 132 N.W.2d 87 (Mich. 1965).

The Sixth Circuit has stated that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice." *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (citing *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986)). Although the Sixth Circuit has recognized the difficulty in demonstrating prejudice where the transcripts are missing, a habeas petitioner must nonetheless "present something more than gross speculation that the transcripts were requisite to a fair appeal." *Bransford*, 806 F.2d at 86.

Petitioner has failed to show that he was prejudiced by the alleged failure to transcribe the *Walker* hearing. Officer Parra testified at trial that he asked petitioner three things of relevance: (1) whether petitioner knew Cain and/or Lee (he said he did not); (2) whether petitioner knew Abreeya Brown and/or Ashley Conaway (he said he did not); and (3) if petitioner would provide his phone number (he did) . Tr. 11/20/12, pp. 151-52, 168, ECF No. 8-21, PageID. 2771-72, 2788. In light of the overwhelming evidence against petitioner, this evidence did not have a substantial and injurious effect on the verdict, thus, petitioner is unable to show that he was prejudiced by the alleged failure to transcribe the *Walker* hearing. Petitioner is not entitled to relief on this claim.

## C. Petitioner's Remaining Claims are Procedurally Defaulted

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by MCR 6.508(D)(3).

The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires that petitioner support the allegations of constitutional error with new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Further, the Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the

12

ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Brown*, 925 N.W.2d 865 (Mich. 2019). The Michigan Court of Appeals denied petitioner's post-conviction appeal in a form order "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." *People v. Brown*, No. 342694 (Mich. Ct. App. Sept. 11, 2018). These orders, however, did not refer to subsection (D)(3), nor did they mention petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained. We must therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection of [petitioner's] claim." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

In rejecting petitioner's post-conviction claims, the Wayne County Circuit Court indicated that petitioner was not entitled to relief because he failed to show cause and prejudice for failing to raise the issues on his direct appeal, as required by MCR 6.508(D)(3). *People v. Brown*, No. 12-05176-03, at *12 (Wayne Cty. Cir. Ct., Oct. 2, 2017). Because the trial court denied petitioner post-conviction relief based on the procedural grounds stated in MCR 6.508(D)(3), petitioner's claims are procedurally defaulted pursuant to that rule. *See Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007).

Petitioner contends that his post-conviction claims are nonetheless preserved for habeas review because his appellate counsel was ineffective. Petitioner has made no such showing. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

13

"Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a thirty-page appellate brief which raised three claims. Petitioner has not shown that appellate counsel's strategy in presenting these three claims and not raising others was deficient or unreasonable. Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to this petition, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

In the present case, because petitioner has not demonstrated any cause for the procedural default of his third and fifth claims, it is unnecessary to reach the prejudice issue. *See Smith*, 477 U.S. at 533; *Rowls v. Jamrog*, 193 F. Supp. 2d 1016, 1026 (E.D. Mich. 2002).

**IV. Conclusion**

For the reasons stated above, the Court shall deny petitioner's application for a writ of habeas corpus. The Court shall also decline to issue a certificate of appealability, as petitioner has

failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed in forma pauperis on appeal. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002). Accordingly,

IT IS ORDERED that petitioner's application for writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue.

IT IS FURTHER ORDERED that petitioner may proceed on appeal in forma pauperis.

s/Bernard A. Friedman<br>
BERNARD A. FRIEDMAN<br>
SENIOR UNITED STATES DISTRICT JUDGE

Dated: March 24, 2020
      Detroit, Michigan